**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JUSTIN BELL and KEITH COSTANZA, on
behalf of themselves and similarly
situated employees,

                       Plaintiffs,

        v.

CITIZENS FINANCIAL GROUP, INC., RBS
CITIZENS, N.A. (d/b/a Citizens Bank), and
CITIZENS BANK OF PENNSYLVANIA
(d/b/a Citizens Bank),

                  Defendants.

NO. 10-cv-00320-GLL

**DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION FOR AN
ORDER CONFIRMING ITS RIGHT TO ENGAGE IN COMMUNICATIONS WITH
<u>NON BELL OPT-INS FOR PURPOSES OF TRIAL PREPARATION AND TRIAL</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

RELEVANT FACTUAL BACKGROUND ................................................................................1

    I.    Defendants Spoke At Length With Each Of Their Trial Witnesses While Collecting Declarations In *Bell,* Long Before Any Rule 23 Class Was Certified ......................................................................................................................1

    II.    Plaintiffs' Counsel Filed Two Additional Rule 23 Lawsuits, While Simultaneously Pursuing the Bell FLSA Collective Action....................................3

    III.    Defendants Prepare For Trial In The Bell Matter ....................................................5

ARGUMENT .........................................................................................................................6

    I.    Defendants Are Permitted To Communicate With Potential Trial Witnesses, As Long as Their Communications Are Not Coercive or Misleading................................................................................................................6

    II.    Plaintiffs' Cited Authority Is An Outlier In Federal Jurisprudence And Contrary To The Overwhelming Legal Authority ..................................................10

    III.    Defendants' Communications with Potential Trial Witnesses Who Have Not Yet Had An Opportunity To Opt Out Of The Litigation Are Indisputably Lawful .....................................................................................................14

CONCLUSION.....................................................................................................................16

# TABLE OF AUTHORITIES

**Page**

CASES

*Altier v. Worley Catastrophe Response, LLC,*
    No. 11-241 ......................................................................................................14

*Am. Pipe & Constr. Co. v. Utah,*
    414 U.S. 538 (1974)..........................................................................................11

*Bell v. Beneficial Consumer Disc. Co.,*
    465 Pa. 225 (Pa. 1975)......................................................................................11

*Boutte v. Lafarge (In re Katrina Canal Breaches Consol. Litig),*
    2008 U.S. LEXIS 112504 (E.D. La. Sept. 22, 2008)...............................................14

*Castaneda v. Burger King Corp.,*
    No. C 08-4262 WHA (JL), 2009 WL 2382688 (N.D. Cal. Jul. 31, 2009).............................11

*Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.,*
    214 F.R.D. 696 (S.D. Ala. 2003) ....................................................................7, 8

*Cuevas v. Citizen Financial Group, Inc.,*
    No. 10-cv-5582 ..............................................................................................3

*Dondore v. NGK Metals Corp,*
    152 F. Supp. 2d 662 (E.D. Pa. 2001) ...............................................................6, 10

*Gates v. Rohm & Haas Co.,*
    No. 06-1743, 2006 U.S. Dist. LEXIS 85562 (E.D. Pa. Nov. 22, 2006) ................................12

*Gulf Oil Co. v. Bernard,*
    452 U.S. 89 (1981)..................................................................................... passim

*Hammond v. City of Junction City, Kan.,*
    No. 00-2146-JWL, 2002 WL 169370 (D. Kan. Jan. 23, 2002), *appeal dismissed*, 84 F.
    App'x 57 (10th Cir. 2003) ............................................................................9, 12

*In re Cmty. Bank of N. Va. & Guar. Nat's Bank of Tallahassee Second Mortg. Litig.,*
    418 F.3d 277 (3d Cir. 2005).......................................................................... passim

*In re McKesson HBOC, Inc. Sec. Litig.,*
    126 F. Supp. 2d 1239 (N.D. Cal) ....................................................................13

*Lester v. Percudani*,
   No. 3:01-CV-1182, 2002 WL 1460763 (M.D. Pa. Apr. 18, 2002)........................................11

*Lewis v. Bayer A.G.*,
   No. 2353 .................................................................................................................7, 12

*Lyons v. Citizens Financial Group, Inc.*,
   No. 1:11-CV-11187 ...................................................................................................4

*Morris v. GMC*,
   2010 U.S. Dist. LEXIS 22618 (E.D. Mich. Mar. 11, 2010) ...................................................14

*Parks v. Eastwood Ins. Servs., Inc.*,
   235 F. Supp. 2d 1082 (C.D. Cal. 2002) ................................................................................11

STATUTES

43 P.S. §§ 333.101, *et seq.*, and ..............................................................................................1

Massachusetts Wage Act, M.G.L. Chapter 151, §§ 1A and 1B ("MWA") ......................... passim

OTHER AUTHORITIES

*ABA Comm. On Ethics & Prof'l Responsibility*, Formal Op. 07-445 (2007) ...............................14

American Bar Association .........................................................................................................14

Federal Rule of Civil Procedure 23 ................................................................................... passim

Massachusetts Rule 23 .............................................................................................................6

New York Rule 23 ...................................................................................................................15

Rule 4.2 of the Pennsylvania Rules of Professional Conduct.......................................................7

*Phila. Bar Assoc. Prof. Guidance Comm.*, Op. 2006-6 ................................................................12

## RELEVANT FACTUAL BACKGROUND

During the parties' December 14, 2012 pretrial conference in this matter, plaintiffs'

counsel sought an order precluding Defendants Citizens Financial Group, Inc., RBS Citizens,

N.A. (d/b/a Citizens Bank) and Citizens Bank of Pennsylvania (d/b/a Citizens Bank)

(collectively "Citizens" or "Defendants") from contacting certain individuals on Defendants'

witness list for trial who elected not to opt into this case, claiming these individuals are

represented by counsel in other class actions pending under Federal Rule of Civil Procedure 23

("Rule 23") in other jurisdictions, and therefore cannot be contacted in *this* matter.  Though such

an order would be convenient for plaintiffs, who sought through their *motions in limine* to limit

Defendants' witnesses to individuals of plaintiffs' choosing, such restrictions on communications

run contrary to established law, especially given the unique facts that exist in this case.  As

discussed below, plaintiffs cannot identify any "particular abuses" threatened by Defendants'

communications with their trial witnesses, which is required for restrictions on communication to

be imposed.

## I.     Defendants Spoke At Length With Each Of Their Trial Witnesses While Collecting Declarations In *Bell,* Long Before Any Rule 23 Class Was Certified

The Amended Complaint in this case was filed by Named Plaintiffs Justin Bell and Keith

Costanza on April 29, 2010, alleging that Assistant Branch Managers ("ABMs") working at

Citizens were improperly classified as exempt from the overtime requirements of the Fair Labor

Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101,

*et seq.*, and the Massachusetts Wage Act, M.G.L. ch. 151, §§ 1A and 1B ("MWA").  Conditional

certification of the collective class under the FLSA was granted on September 2, 2010, and

notice was sent to 2,701 putative class members.  473 of those individuals opted into this action

on or before the opt-in deadline of December 6, 2010.[1]  The 473 opt-in Plaintiffs worked as

ABMs for Citizens at varying points of time from March 10, 2007 to the present.  They worked

in over 1,000 different Citizens branches across nine (9) different states (Pennsylvania, New

Jersey, Delaware, Connecticut, Massachusetts, New Hampshire, New York, Rhode Island and

Vermont), and reported to over 1,000 different Branch Managers ("BMs") and Regional

Managers ("RMs").  The largest concentration of ABMs over the class period was in New York,

Massachusetts, and Pennsylvania.

On December 19, 2010, plaintiffs filed a motion for class certification under the PMWA

and the MWA pursuant to Rule 23.  In support of its opposition to that motion, Citizens obtained

43 declarations from current and former ABMs, BMs, and RMs – none of whom had opted into

the *Bell* FLSA collective action because they disagreed with the allegations in the Complaint.

The declarations detailed the experiences these individuals had as managers at Citizens, which

were very different from the allegations in the Complaint.  Before delving into any substantive

dialogue, Citizens' counsel took deliberate care to communicate to these individuals an

introductory statement, which included the following:

- The employee's participation in the conversation was completely voluntary;

- If at any point in the conversation the employee did not want to continue, he or she could choose to end the conversation;

- Information gathered during the conversation would be used in connection with the litigation against Citizens;

- The lawsuit against Citizens was brought as a class action, which meant that the plaintiffs were trying to sue not only on behalf of themselves, but also on behalf of other current and former Citizens employees;

---

[1] By Order dated January 27, 2011, the Court permitted 12 individuals to file late opt-in consent forms and become members of the class.

- There would be no retaliation or adverse employment action against the employee in response to his or her participation in the conversation or in response to any information provided;

- The information provided by the employee would never be used for performance evaluation purposes;

- There would be no benefit to the employee for participating in the conversation;

- Citizens' counsel was representing Citizens, the defendants in the pending lawsuit, and not any employee individually;

- As a potential member of the class, the employee's interests could be adverse to Citizens' interests; and

- The employee had the right to retain his or her own counsel, including the plaintiffs' counsel, before deciding whether to participate in the conversation.

It was only after these individuals confirmed that they were interested (and oftentimes, eager) to speak with Citizens' counsel to voluntarily provide information about their work experiences, and that they affirmatively chose not to opt into the FLSA collective action, that any substantive conversation began.  In addition to the spoken introductory statement described above, each declarant signed a "voluntariness" statement confirming his or her desire to voluntarily participate in the conversation and sign a declaration.  The declarations were collected by Citizens in January 2011, and submitted alongside its opposition to class certification papers on January 31, 2011.  Ultimately, Plaintiffs' motions for class certification pursuant to Rule 23 under the PMWA and MWA were denied by this Court on June 8, 2011.  The current case only involves plaintiffs' claims under the FLSA.

## II.    Plaintiffs' Counsel Filed Two Additional Rule 23 Lawsuits, While Simultaneously Pursuing the Bell FLSA Collective Action

On or about December 2, 2010, Plaintiff Alberonys Cuevas filed a Complaint in the Eastern District of New York (*Cuevas v. Citizens Financial Group, Inc.*, 10-cv-5582), which purported to represent more than 830 current and former ABMs who work or have worked for

Citizens in New York, at any time from December 2, 2004 to the present, on claims for alleged

misclassification under the New York Labor Law.  In support of Citizens' opposition to class

certification under Rule 23, Citizens obtained 53 declarations from current and former ABMs,

BMs, and RMs on a purely *voluntary* basis during the summer of 2011, using the same spoken

introductory statement and written voluntariness statements it used while speaking to potential

declarants in the *Bell* matter, as detailed above.[2]  Many of these individuals were covered by the

FLSA collective action in *Bell*, but specifically chose not to opt into the *Bell* class because they

disagreed with the allegations in the Complaint.  On May 22, 2012, Judge Block granted

Plaintiffs' Rule 23 class certification motion in *Cuevas*.  On June 5, 2012, Citizens filed a timely

petition to the Second Circuit Court of Appeals seeking review of Judge Block's class

certification Order pursuant to Rule 23(f).  Magistrate Judge Levy stayed discovery and class

notice pending the Second Circuit's ruling on the petition.  On July 18, 2012, the Second Circuit

Court of Appeals granted Citizens' petition.  After the Second Circuit granted Defendants'

petition, Defendants moved Judge Block, in accordance with Rule 23(f), for a stay pending

resolution of the appellate proceeding.  The matter has been fully briefed and is currently

pending before the Second Circuit.  No oral argument date has been set.  Accordingly, no class

notice has been mailed, and the opt-out period in *Cuevas* has not begun.

On or about July 5, 2011, Plaintiff Christine Lyons filed a Complaint in the District of

Massachusetts (*Lyons v. Citizens Financial Group, Inc.*, No. 1:11-CV-11187), which purported

to represent 579 current and former ABMs who work or have worked for Citizens in

Massachusetts, at any time from July 5, 2009 to the present, on claims for misclassification under

the MWA.  This lawsuit was filed as a spinoff from the original *Bell* lawsuit filed in 2010, after

---

[2] Because these declarations were gathered from individuals who had knowledge of the ABM
position in New York, they are relevant to the *Bell* lawsuit, which covers New York as well.

this Court denied certification of the Rule 23 class brought under the MWA in *Bell* on June 8, 2011. In support of Citizens' opposition to class certification under Rule 23, Citizens submitted 29 declarations from current and former ABMs, BMs, and RMs which were also submitted in the *Bell* matter, as detailed above. Many of these individuals were covered by the FLSA collective action in *Bell*, but specifically chose not to opt into the *Bell* class because they disagreed with the allegations in the Complaint. Plaintiffs' motion for class certification in *Lyons* was granted on July 9, 2012. Notice to the 579 potential class members was sent on October 5, 2012, with a deadline of December 4, 2012 for returning exclusion forms. Of the 579 potential class members, 24 filed withdrawal forms.

## III.  Defendants Prepare For Trial In The *Bell* Matter

In anticipation of the trial in *Bell,* which was initially scheduled to begin on January 14, 2013, Citizens submitted a Supplemental Pretrial Statement Witness List, which it filed on December 7, 2012.[3] Citizens noted its "friendly" witnesses (individuals who are not *Bell* opt-ins, and who are not represented by plaintiffs' counsel) on its Supplemental Pretrial Statement Witness List with a Proskauer Rose address. The majority of Citizens' "friendly" witnesses are individuals with whom Citizens' counsel spoke at length and who provided declarations almost two years ago, long before any Rule 23 class was certified. Citizens' counsel has never had an *ex parte* communication with any FLSA opt-in.

During the parties' pre-trial conference, plaintiffs' counsel suggested that Defendants' counsel should not be permitted to communicate with any of the individuals on Defendants' witness list who are members of the certified classes in the Rule 23 litigations pending in New

---

[3] Citizens included witnesses from all nine (9) of the states implicated by this lawsuit on its witness list, including individuals in various positions who will be able to provide a comprehensive perspective on the job duties of Citizens' ABMs.

York and Massachusetts, despite the fact all of the individuals currently on Defendants' witness list as "friendly" witnesses (and with whom Citizens' counsel anticipates communicating) have affirmatively chosen *not* to opt into the *Bell* matter.[4]  Thus, none of the individuals on Citizens' witness list are clients of plaintiffs' counsel in the *Bell* matter, and Citizens has no intention of discussing with them their participation in the pending Rule 23 litigations.[5]

On January 2, 2013, plaintiffs' counsel identified 41 ABM ("clients") who did not opt into the *Bell* litigation in New York and Massachusetts, and with whom plaintiffs' counsel insists Defendants are precluded from communicating.  Of these 41 ABMs identified by plaintiffs' counsel as clients, 34 are from New York and 7 are from Massachusetts.  However, all of these individuals *voluntarily* provided Defendants with declarations in support of Defendants' opposition to class certification (in both the Rule 23 New York and Massachusetts litigations).  To be clear, Citizens' counsel has not spoken substantively with any of the individuals at issue since the New York or Massachusetts Rule 23 classes were certified.  Citizens' counsel only recently reached out to these individuals to confirm their willingness to testify at the *Bell* trial.

## ARGUMENT

**I.      Defendants Are Permitted To Communicate With Potential Trial Witnesses, As Long as Their Communications Are Not Coercive or Misleading**

Communications between parties and counsel in the class action setting are guided by the Supreme Court's holding in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100-01 (1981), which remains

---

[4] Plaintiffs' counsel cited *Dondore v. NGK Metals Corp,* 152 F. Supp. 2d 662 (E.D. Pa. 2001) in support of his theory that Defendants are precluded from any such contact.  Defendants disagree with this interpretation of *Dondore*.  *See* discussion, *infra.*

[5] All of Citizens' witnesses at issue were identified in its Pretrial Statement *before* any Rule 23 class members were provided notice or given the opportunity to opt out of the *Cuevas* and *Lyons* litigations.  In fact, the New York putative class members still have not yet been provided an opportunity to opt out of the litigation.

the authority on this issue.  In *Gulf Oil,* the Supreme Court held that "[t]o the extent that the district court is empowered . . . to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened."  452 U.S. at 102.  Indeed, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties . . . In addition, such a weighing - - identifying the potential abuses being addressed - - should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances" *Id.* at 101-02.  Because of First Amendment considerations, and the respective parties' rights to obtain information to prosecute and defend their case, a blanket ban on communications is thus inappropriate "in the absence of a clear record and specific findings of need.  Other, less burdensome remedies may be appropriate.  Indeed, in many cases there will be no problem requiring remedies at all."  *Id.* at 104.

Though *Gulf Oil* dealt with communications by plaintiffs' counsel with a putative class prior to Rule 23 class certification, its holding has not been so limited and its application has been extended to communications by defense counsel with the class.  *See, e.g., In re Cmty. Bank of N. Va. & Guar. Nat's Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277 (3d Cir. 2005) (recognizing *Gulf Oil's* application to communications between all counsel and parties, and extending its analysis to communications after class certification);  *Lewis v. Bayer A.G.*, No. 2353 Aug. Term 2001, 2002 WL 1472339, at *9 (Pa. Com. Pl. June 12, 2002) (adopting the *Gulf Oil* analysis in determining whether defense counsel violated Rule 4.2 of the Pennsylvania Rules of Professional Conduct by communicating directly with putative class members); *Cox Nuclear*

*Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 697 (S.D. Ala. 2003) (applying the *Gulf Oil* analysis to communications between defense counsel and plaintiffs).

Plaintiffs must provide a specific record that the communication at issue – that is, Defendants' contact with individuals with whom it has already spoken at length, all of whom have expressed a willingness to assist Citizens in its defense of the *Bell* matter – is abusive, before the Court may restrict such communications. *Gulf Oil*, 452 U.S. at 101-102; *Cox Nuclear Med.*, 214 F.R.D. at 697-698. Abusive practices include "communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel." *Cox Nuclear Med.*, 214 F.R.D. at 698. Here, plaintiffs are unable to make a showing of any such abuses.

First, all of the ABMs and former ABMs with whom Defendants' counsel has spoken have chosen *not* to opt into the *Bell* matter and are therefore unrepresented by plaintiffs' counsel in the matter at issue. These individuals were selected to provide declarations explicitly because they did not opt into the *Bell* collective action. Second, all of the individuals plaintiffs' counsel has identified as their "clients" have voluntarily signed declarations for the Company *prior* to class certification in New York and Massachusetts. Third, Defendants' counsel's recent communications with all of these individuals, which took place in early December, focused only on whether these individuals would be willing to be *Bell* trial witnesses. Before Defendants' counsel even began these brief communications, we once again reiterated that these communications were voluntary and that no action would be taken against any employee if they elected not to speak with us. Moreover, the only litigation that was referenced during these brief communications was the *Bell* litigation and, as was done during the declaration gathering

process, which was undertaken prior to class certification, Defendants' counsel reiterated that being a trial witness was entirely voluntary.  It should also be noted that nothing substantive was discussed with these individuals during these brief communications.  Finally, out of an abundance of caution, after the parties' pre-trial conference, and in anticipation of this motion, Defendants ceased all communications with these potential trial witnesses.  Any future communications will be with regard to, and in preparation for, the *Bell* trial only.  If these individuals plan to pursue a Rule 23 claim against Citizens in the future – which they may do – they will not be precluded from relying upon the same truthful testimony (and declarations) which they provided in the *Bell* trial in pursuing those claims.  Simply because a witness in *Bell* may provide truthful testimony that is not helpful to plaintiffs in the Rule 23 actions does not make Citizens' conversations with these individuals about their work experiences "abusive."  It only means these individuals may have no claim against Citizens based on their truthful testimony under oath.

Without any "specific record showing by [plaintiffs] of the particular abuses by which [they are] threatened," Defendants are entitled to continue to communicate with all of their trial witnesses, regardless of their potential participation in lawsuits in other jurisdictions.  *Gulf Oil*, 452 U.S. at 102.  *See also Hammond v. City of Junction City, Kan.*, No. 00-2146-JWL, 2002 WL 169370 at *3 (D. Kan. Jan. 23, 2002) (holding that "[t]he record must show the particular abuses that have occurred or that are threatened, and the court's analysis should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances") (citation and internal quotation marks omitted), *appeal dismissed*, 84 F. App'x 57 (10th Cir. 2003). Certainly, Citizens has the right to prepare its best defense against plaintiffs' claims, which includes speaking with and preparing for trial those individuals who

indicated a desire and willingness to share their experiences as Citizens employees, long before

the Rule 23 actions were certified.  Citizens of course cannot force these individuals to appear as

trial witnesses and has made clear that all involvement in trial preparation is voluntary.  These

individuals have all elected to remain involved in assisting Citizens as it prepares for trial.

## II.     Plaintiffs' Cited Authority Is An Outlier In Federal Jurisprudence And Contrary To The Overwhelming Legal Authority

Plaintiffs rely on *Dondore. v. NGK Metals Corp*, 152 F. Supp. 2d 662 (E.D. Pa. 2001),

which has been almost unanimously rejected by subsequent courts that have considered the issue

of communications between counsel and putative class members, as authority for their position

that Defendants should be precluded from speaking with absent class members.  In *Dondore*,

counsel in an individually-filed federal case seeking damages for beryllium exposure to two

residents living near the defendant's facility sought permission to interview potential witnesses

with "knowledge of plaintiffs' illnesses, their exposure to beryllium, and other relevant facts."

152 F. Supp. 2d at 664.  Plaintiffs' counsel objected to the witness interviews on the grounds that

these witnesses were putative class members in a Rule 23 state action that sought damages for

the same beryllium exposure on behalf of a (not yet certified) class of local residents, who did

not know there was a lawsuit pending on their behalf.  The court was concerned that in providing

testimony regarding the individual plaintiffs in the federal case, these "witnesses" could,

unbeknownst to them, negatively impact their own claims pending in state court that they did not

yet know about.  The court found that defense counsel could not contact these witnesses to

"prevent lawyers from taking advantage of uncounselled lay persons."  *Dondore*, 152 F. Supp.

2d at 666.

Furthermore, in concluding that putative class members are "properly characterized as

parties to the action" and therefore should not be contacted without the consent of plaintiff's

counsel, the *Dondore* court relied on two cases that had nothing to do with the relationship of

counsel to a putative class for purposes of class communications.[6]  The notion that putative class

members are traditional parties to a lawsuit was specifically rejected by the Third Circuit four

years later in *In re Cmty. Bank of N. Va.*, 418 F.3d at 313, which instead instructed that "class

counsel do not possess a traditional attorney-client relationship with absent class members."

Oddly enough, the *Dondore* court failed to consider or even mention in passing the

authoritative Supreme Court case that governs communications with class members – *Gulf Oil* –

in reaching its conclusion.  It merely cherry-picked supportive language from cases that spoke

nothing of class communications to support a holding that it clearly wanted to reach, regardless

of the weight of relevant authority otherwise.  It comes as no surprise then that the holding in

*Dondore* has been almost unanimously rejected by courts that have subsequently considered the

issue of class communications by counsel.  *See, e.g., Castaneda v. Burger King Corp.*, No. C 08-

4262 WHA (JL), 2009 WL 2382688 (N.D. Cal. Jul. 31, 2009) (acknowledging that "the weight

of authority seems unwilling to accept the *Dondore* view") (citation omitted); *Parks v. Eastwood

Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002) (FLSA action in which the court

specifically addressed the *Dondore* court's reasoning and rejected its findings); *Lester v.

Percudani*, No. 3:01-CV-1182, 2002 WL 1460763, at *3 (M.D. Pa. Apr. 18, 2002) (applying

---

[6] The *Dondore* court relied on *Bell v. Beneficial Consumer Disc. Co.*, 465 Pa. 225, 229 (Pa.
1975) and *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 551-52 (1974).  *Bell v. Beneficial
Consumer Disc. Co.*, 465 Pa. 225, 348 (Pa. 1975) stated in passing, and without regard to the
stage of the litigation, that putative class members are "properly characterized as parties to the
action."  The *Dondore* court's reliance upon *Bell* is misplaced as the court in *Bell* was not
addressing the issue of representation; rather, it was addressing whether a pre-trial order
dismissing class aspects was an appealable order.  Likewise, the *Dondore* court cherry-picked
language from *Am. Pipe* completely out of context.  *Am. Pipe* made no mention of
communications with class members and only spoke about general class action principles as they
relate to tolling of the statute of limitations.

*Gulf Oil* standard in refusing to enter order restricting defendant from sending letter to putative

class members where "[p]laintiffs presented absolutely no evidence that this [letter was] either

legally or factually misleading"); *Lewis*, 2002 WL 1472339, at *9 (stating that "a critical starting

point for analysis of orders to limit communications between parties and potential class members

is . . . *Gulf Oil*").[7]

Other courts have significantly limited the holding in *Dondore* to align it with the *Gulf*

*Oil* analysis, finding that the *Dondore* court's holding was merely that communications can be

restricted only to prevent abuse and to prevent class members from being taken advantage of by

deceptive lawyers.  *Phila. Bar Assoc. Prof. Guidance Comm.*, Op. 2006-6, at *3 (2006),

*available at* WL 4590660 (last visited Jan. 3, 2013) (finding that the holding in *Dondore* was

premised on a desire to "prevent lawyers from taking advantage of uncounselled lay persons")

(citation omitted); *Hammond*, 2002 WL 169370, at *3 (finding that *Dondore* merely stands for

the proposition that defense counsel "could be restricted, in certain circumstances, with respect

to communications with potential members of the class about the subject of the suit" to prevent

unsophisticated putative class members from being taken advantage of).  The concerns of the

*Dondore* court do not exist here.  The individuals with whom Defendants' counsel would like to

speak are all managers at the bank who have been aware of the pending litigation for over 2

years.  These individuals chose specifically not to opt into *Bell*.  They also willingly and

voluntarily spoke with Citizens' counsel about their work experiences, while fully aware that the

information they provided contradicted the allegations in the Complaint.  These individuals

purposely made it clear to Citizens' counsel that the allegations in the Complaint were contrary

---

[7] Even within its own district, *Dondore* has only been followed once in an unpublished opinion
(*see Gates v. Rohm & Haas Co.*, No. 06-1743, 2006 U.S. Dist. LEXIS 85562, at *7 n.2 (E.D. Pa.
Nov. 22, 2006)).  It should be noted that neither *Dondore* nor *Gates* involved a collective action
under the FLSA.

to their work experiences, and signed declarations attesting as such.  Citizens' witnesses who could have opted into *Bell* have also had every opportunity to obtain additional information from plaintiffs' counsel if they so desired.  Unlike *Dondore,* this is not a case where the individuals at issue are at risk of being tricked into something they do not want to do against their interest.[8]

Finally, *Dondore's* holding was significantly undercut by the Third Circuit Court of Appeals in *In re Cmty. Bank of N. Va.*, 418 F.3d 277, in which the Court relied on *Gulf Oil* and refused to invalidate opt out forms prompted by communications between attorneys and putative class members.  The Court specifically rejected any suggestion that "outside counsel who had communicated with class members who were not their clients [m]ay have violated their ethical duty to refrain from communicating about the substance of the settlement with class members represented by another lawyer." *In re Cmty. Bank of N. Va.*, 418 F.3d at 313 (citation and internal quotation marks omitted).  The Court instead concluded that "[w]hile lead counsel owes a generalized duty to unnamed class members, the existence of such a fiduciary duty does not create an inviolate attorney-client relationship with each and every member of the putative class. Taken to an extreme, lead plaintiff's logic suggests that putative class members are forever walled off from any effort at solicitation, a proposition that seems unsupportable." *Id. (citing In re McKesson HBOC*, *Inc. Sec. Litig.*, 126 F. Supp. 2d 1239 (N.D. Cal.), *appeal dismissed*, No. 00-16142, 2000 U.S. Dist LEXIS 38718 (9th Cir. Sept. 18, 2000).

---

[8] At the outset, when Defendants' counsel was speaking with Citizens' employees as part of its fact gathering and to obtain supporting declarations, some employees expressed that they simply did not want to get involved and preferred not to speak about the lawsuit either way.  In response, Defendants' counsel immediately ended the conversation as those individuals requested.  Defendants' counsel kept no record of the identity of these individuals and did not provide their information to Citizens to avoid any appearance of retaliation.  The only individuals currently at issue are those who have expressed an affirmative desire to continue to assist with Citizens' defense in the *Bell* matter.

Indeed, the Court should follow the weight of authority, rather than the outlying case cited by plaintiffs, and should not deviate from a straightforward application of the *Gulf Oil* analysis.  And with no basis for a claim that Citizens' proposed contact with its trial witnesses would be misleading or abusive, *Gulf Oil* dictates that the communications with all witnesses be permitted.

**III.    Defendants' Communications with Potential Trial Witnesses Who Have Not Yet Had An Opportunity To Opt Out Of The Litigation Are Indisputably Lawful**

Defendants should not be precluded from speaking with the 34 New York witnesses who have not yet had the opportunity to opt out of the litigation.  In April 2007, the American Bar Association issued a Formal Ethics Opinion (07-445) which states that a "client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired."  *ABA Comm. On Ethics & Prof'l Responsibility*, Formal Op. 07-445 (2007).  Numerous district courts throughout the country have followed the ABA's Formal Ethics Opinion and have held that a potential class member is not represented by counsel until that individual has had an opportunity to (and did not) opt out of the litigation.  *See, e.g., Boutte v. Lafarge (In re Katrina Canal Breaches Consol. Litig)*, No. 05-4182 Section "K" (2), 2008 U.S. Dist. LEXIS 112504 (E.D. La. Sept. 22, 2008); *Morris v. GMC*, No. 2:07-md-01867, 2010 U.S. Dist. LEXIS 22618, at *25 (E.D. Mich. Mar. 11, 2010).  The Third Circuit has also adopted this reasoning.  *See In re Cmty. Bank of N. Va.*, 418 F.3d at 313 ("constructive attorney-client relationship exists once [the] opt-out period has closed") (internal citations omitted).

Recently, in *Altier v. Worley Catastrophe Response, LLC*, No. 11-241 c/w 11-242, 2012 U.S. Dist. LEXIS 6391 (E.D. La. Jan. 18, 2012) the court addressed communications with individuals involved in a FLSA collective action and a parallel opt-out Rule 23 class action

involving breach of contract claims in state court against the same defendant.  In *Altier*, the opt-ins in the FLSA action were putative class members in the state court class action, and both the FLSA and state breach of contract claims arose from the putative class members' employment with the defendant (the contracts alleged to be breached were employment agreements).  *Id.* at *11-12.  A state court class was certified, but the scope of the class had not been defined, no notice had been sent to putative members, and the defendant appealed the certification decision. *Id.* at *12.

The named plaintiffs in the state court class action moved to intervene in the FLSA collective action in order to object to a settlement that they claimed would cause the FLSA opt-ins to release claims arising out of their employment without fully knowing the consequences of such a release on the state court class action.  *Id.* at *22.  The district court denied the motion, finding that that the state court plaintiffs lacked "a direct, substantial and legally protectable interest in representing [a litigation class] in this court because the state court has not yet defined the scope of the class, no notice of the state court class action has been formalized or sent to putative class members, and [the state court defendant] has appealed the state court's order certifying a class."  *Id.* at *35.  The district court further stated, "[a]ny interest the putative class members may have in a [class] remains contingent on the state appeal court's decision . . . a definition of the scope of the class, notice to class members and expiration of the opt-out period. Until these contingencies occur, the [named plaintiffs] and their counsel do not represent any members of the [putative class], except those who have agreed to be represented by counsel . . ." *Id.* at *36.

Likewise, since the class certification decision is on appeal at the Second Circuit and no notice has gone out, plaintiffs' counsel does not yet represent the potential members of a New

York Rule 23 class.  Defendants' counsel is therefore permitted to communicate with them without restriction, as these individuals are unrepresented in both *Bell* and *Cuevas,* even if the Court finds that communications with the Massachusetts trial witnesses who did not opt out of the Rule 23 class are not permissible (though a *Gulf Oil* analysis dictates otherwise).

Furthermore, on a practical level, a ban on communications with a class that has been certified but has not yet received notice or had the opportunity to exclude themselves from the *Cuevas* lawsuit would deny the Defendants the right to defend against any of the New York claims in *Bell*.  The relevant time period in *Cuevas* includes the entire relevant time period in *Bell;* this means that every ABM who could have opted into *Bell* is currently covered by the *Cuevas* class because they have not had the chance to opt out.  An outright ban on communications with the putative class members in *Cuevas* would preclude Defendants from offering the testimony of the individuals who were ABMs at Citizens during the last 6 years – which would effectively deny Citizens the right to respond to plaintiffs' allegations regarding how its managers worked in New York.  Citizens should not be precluded from defending itself against plaintiffs' claims.

## CONCLUSION

For the reasons stated above, Defendants respectfully request a Court order confirming its right to speak with the individuals on its witness list who did not opt in to the *Bell* case.

Respectfully submitted,


CITIZENS FINANCIAL GROUP, INC.
RBS CITIZENS, N.A.
CITIZENS BANK OF PENNSYLVANIA


By their attorneys,

Proskauer Rose LLP


    */s/ Alison Langlais*      

Elise M. Bloom*
Brian J. Gershengorn*
Proskauer
Eleven Times Square
New York, NY 10036
Tel:  212.969.3000; Fax:  212.969.2900
ebloom@proskauer.com
bgershengorn@proskauer.com

Mark W. Batten*
Alison Langlais*
Proskauer
One International Place
Boston, MA  02110
Tel: (617) 526-9600; Fax: (617) 526-9899
mbatten@proskauer.com
alanglais@proskauer.com


*Admitted *pro hac vice*

Dated:  January 7, 2013

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 7, 2013, a true copy of the foregoing was filed through the Court's electronic filing system (ECF) and was served upon all attorneys of record for each other party to this action through operation of such system.  It is available for viewing and downloading through the ECF system.


*/s/ Alison Langlais*

Alison Langlais